UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| WESCO INSURANCE COMPANY, | |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| vs. | |
| FEDERAL INSURANCE COMPANY, | Civil No.: |
| Defendants. | **JURY TRIAL DEMANDED** |

---

Plaintiff, Wesco Insurance Company, a wholly owned subsidiary of AmTrust Financial Services, Inc. (hereinafter "Wesco"), by and through its attorneys, Hurwitz & Fine, P.C., for its complaint against Defendant, Federal Insurance Company, a wholly owned subsidiary of Chubb Limited (hereinafter "Federal"), alleges upon information and belief that:

## PARTIES

1.   The plaintiff, Wesco, at all times hereinafter mentioned, was and still is a foreign insurer, organized and existing under the laws of the State of Delaware, with a principal place of business located at 800 Superior Avenue East, 21st Floor, Cleveland, Ohio, and is licensed to transact insurance business in New York State, including issuance of the commercial general liability policy, as alleged below.

2.   Upon information and belief, the defendant, Federal, at all times hereinafter mentioned, was and still is a foreign insurer, organized and existing under the laws of the State of Indiana, with a principal place of business located at 251 North Illinois, Suite 1100, Indianapolis, Indiana, and is licensed to transact insurance business in New York State, including issuance of the commercial excess liability policy, as alleged below.

1

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this matter under 28 USC §1332 in that it arises between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, insofar as the value of the right being protected and/or the injury being averred exceeds $75,000.

4. Venue is proper in this district under 28 USC §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

5. The Underlying Incident, as alleged in the Underlying Action, took place in Bronx County, in the State of New York.

**BACKGROUND AND UNDERLYING ACTION/INCIDENT**

6. This declaratory judgment action is seeking a ruling from this Court that Wesco's Commercial General Liability policy is limited to the $1,000,000 Each Occurrence Limit of one policy period regarding the alleged injuries of L.G. and K.L.G., being sought in a suit captioned *L.G. and K.L.G., infants by their Mother and Natural Guardian, Laurie Dominguez, and Laurie Dominguez, Individually -against- Rosh Management, LLC*, filed in the Supreme Court of the State of New York, County of Bronx, bearing index no. 21232/2017E (the "Underlying Action").

7. The basis for this assertion by Wesco is that this Court has previously ruled that exposure to lead paint over a period of years is one occurrence, which does not trigger multiple policy limits, when occurrence is defined as an accident, including continuous or repeated exposure to substantially the same general harmful conditions.[1]

---

[1] *Hanover Ins. Co. v. Vermont Mut. Ins. Co.,* 69 F.Supp.3d 302 (2014), the facts in the Underlying Action are nearly identical to the facts in *Hanover*, as is the policy issued by Wesco to Rosh.

8. In the alternative, Wesco seeks a declaration that if multiple policy years, and policy limits, are triggered, that vertical exhaustion per policy year of all available Primary and Excess coverage must occur before triggering available insurance limits of any subsequent policy periods.

9. The alleged incident that is the basis of the Underlying Action was a continuous or repeated exposure to substantially the same general harmful condition, i.e., the alleged exposure to paint containing lead, lead dust, and water contaminated by lead at the property located at 2381 Valentine Avenue, Bronx, New York (hereinafter the "Premises"), where the plaintiffs in the Underlying Action allegedly occupied an apartment from 2013 through 2017, and where it is further alleged that the lead paint on the walls, doors and all painted areas of said apartments where the infants resided at the Premises were peeling and flaking and pieces of lead were falling to the floor, and where the infant plaintiffs allegedly ingested and inhaled flaking and peeling lead paint chips as well as lead-based dust and water and sustained serious injury (hereinafter the "Underlying Incident").

10. The Premises were alleged to have been owned, managed, controlled and maintained by Rosh Management LLC (hereinafter "Rosh").

11. Rosh is insured by a primary Commercial General Liability policy issued by Wesco, and an Excess Commercial Liability policy issued by Federal.

12. There has been a demand in excess of the available $1,000,000 Each Occurrence Limit of the primary Commercial General Liability policy issued by Wesco to Rosh.

13. The matter has been tendered to the excess carrier, Federal, who has taken the position that the limits of each policy year of the primary Commercial General Liability policies must be exhausted before Federal will contribute to any settlement or award from the Court in the Underlying Action.

## ROSH'S COMMERCIAL GENERAL LIABILITY POLICY ISSUED BY WESCO

14. On or about August 10, 2014, Wesco issued a commercial policy package policy, which included a Commercial General Liability part with a $1,000,000 Each Occurrence Limit, for the period from August 10, 2014, to August 10, 2015, bearing policy number WPP1152913 00 (hereinafter the "Primary Policy"), to Rosh.

15. The Primary Policy was renewed from August 10, 2015, to August 10, 2016, bearing policy number WPP1152913 01, and from August 10, 2016, to August 10, 2017, bearing policy number WPP1152913 02 (hereinafter collectively the "Primary Policy").

16. Subject to the express terms, provisions, conditions, exclusions, and limitations set forth in the Policy, none of which have been waived by Wesco and all of which have been and continue to be expressly reserved and retained by Wesco, the Policy only provides defense and indemnity to Rosh for losses resulting from bodily injury or property damage caused by an occurrence during the policy period and within the coverage territory, provided that the insured, among other things, complies with all of the terms and conditions set forth in the Policy.

17. The Policy's insuring agreements, found in the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** (CG 00 01 12 07), as modified by the **NEW YORK CHANGES – COMMERCIAL GENERAL LIABILITY COVERAGE FORM** (CG 01 63 07 11), provides in pertinent part:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **1. Insuring Agreement** of Section **I** - **Coverage A Bodily Injury And Property Damage Liability** is replaced by the following:

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

b. This insurance applies to "bodily injury" and "property damage" only if:

   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   (2) The "bodily injury' or "property damage" occurs during the policy period; and

   (3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily

5

injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    **c.**  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    **d.**  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        **(1)**  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        **(2)**  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        **(3)**  Becomes aware by any other means that D. "bodily injury" or "property damage" has occurred or has begun to occur.

    **e.**  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

***

**B.**    Paragraph **1.a.** of Section I - Coverage **B Personal And Advertising Injury Liability** is replaced by the following:

    **1.**    **Insuring Agreement**

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:
>
>> **(1)** The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and
>>
>> **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** and **B** or medical expenses under Coverage **C**.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

***

18. The Policy contains certain terms which are defined explicitly and have special meaning as they relate to the interpretation of the Policy. These definitions are found in the Policy's main **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** (CG 00 01 12 07).

19. Defined Policy terms pertinent to this matter include:

   **SECTION V – DEFINITIONS**

***

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*\*\*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\*\*\*

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

  For the purposes of this insurance, electronic data is not tangible property.

  As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.

***

20. Applicable to this loss, and specific to this litigation, is **Section III – Limits of Insurance** of the Primary Policy, which provides, in relevant part:

  **SECTION III - LIMITS OF INSURANCE**

  **1.** The Limits of Insurance shown in the Declarations and the rules below fix *the most we will pay regardless of the number of:*

   **a.** *Insureds;*

   **b.** *Claims made or "suits" brought;* or

   **c.** *Persons or organizations making claims or bringing "suits".*

  **2.** The General Aggregate Limit is the most we will pay for the sum of:

   **a.** Medical expenses under Coverage C;

    **b.** *Damages under Coverage A,* except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    **c.** Damages under Coverage B.

***

**5.** Subject to Paragraph 2. or 3. above, whichever applies, the *Each Occurrence Limit* is the most we will pay for the sum of:

    **a.** *Damages under Coverage A;* and

    **b.** Medical expenses under Coverage **C** *because of all* "bodily injury" and "property damage" *arising out of any one* "occurrence".

***

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

*Emphasis added.*

21. As indicated in paragraph 19. above, "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

### ROSH'S COMMERCIAL EXCESS LIABILITY POLICIES ISSUED BY FEDERAL

22. Upon information and belief, on or about August 10, 2014, Federal issued a Commercial Excess Liability Insurance Policy to Rosh, for policy period of August 10, 2014, to August 10, 2015, bearing policy no. 7993-81-94, which has a $5,000,000.00 per claim/aggregate limit (hereinafter the "Excess Policy").

23. Upon information and belief, the Excess Policy was renewed from August 10, 2015, to August 10, 2016, bearing policy number 7993-91-98, and from August 10, 2016, to August 10, 2017, bearing policy number 7993-99-14. (hereinafter collectively the "Excess Policy")

24. Upon information and belief, the Excess Policy is excess over the Primary Policy issued by Wesco.

25. Upon Information and belief, the Excess Policy provides coverage for the type of injury allegedly sustained by the plaintiffs in the Underlying Action, i.e., bodily injury arising out of exposure to or inhalation or ingestion of lead paint, lead dust, and/or lead contaminated water, and that Federal has only issued a Partial Disclaimer of Coverage regarding a lead exclusion relative to coverage under Coverage B – Personal and Advertising Injury.

**FIRST CAUSE OF ACTION**
**EXPOSURE TO LEAD PAINT IS ONLY ONE OCCURRENCE AS DEFINED BY THE PRIMARY POLICY ISSUED BY WESCO**

26. Wesco reasserts and realleges each and every allegation contained within paragraphs "1" through "25" as if fully set forth herein.

27. The Primary Policy provides coverage for bodily injury, property damage, and personal and advertising injuries, as defined by the policy, subject to the polices terms, provisions, conditions, and exclusions.

28. The Primary Policy's main coverage form, the Commercial General Liability Coverage Form (CG 00 01 12 07), Section III – Limits of Liability, provides in relevant part, that:

> **SECTION III - LIMITS OF INSURANCE**
>
> **3.** The Limits of Insurance shown in the Declarations and the rules below fix *the most we will pay regardless of the number of:*
>
>   **a.** *Insureds;*

11

    **b.** *Claims made or "suits" brought;* or

    **c.** *Persons or organizations making claims or bringing "suits".*

**4.** The General Aggregate Limit is the most we will pay for the sum of:

    **a.** Medical expenses under Coverage C;

    **b.** *Damages under Coverage A,* except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    **c.** Damages under Coverage B.

***

**6.** Subject to Paragraph 2. or 3. above, whichever applies, the *Each Occurrence Limit* is the most we will pay for the sum of:

    **a.** *Damages under Coverage A;* and

    **b.** Medical expenses under Coverage **C** *because of all "bodily injury"* and "property damage" *arising out of any one "occurrence".*

***

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

*Emphasis added.*

    29.    L.G. and K.L.G.'s alleged exposure to lead paint, lead dust, and lead contaminated water over the three years that L.G. and K.L.G. occupied the apartment on the Premises is one occurrence, as defined by the Primary Policy.

30. The Limits of Insurance of the Primary Policy provides that the limits of insurance shown in the declarations is the most that Wesco will pay regardless of the number of insureds, claims made or suits brought, or persons or organizations making claims or bringing suits.

31. The Limits of Insurance of the Primary Policy provides that the Each Occurrence Limit is the most we will pay for the sum of Damages under Coverage A because of all "bodily injury" and "property damage" arising out of any one "occurrence".

32. The Primary Policy provides that "bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

33. The Primary Policy provides that "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

34. The Primary Policy provides in the Declarations that the Each Occurrence Limit is $1,000,000.

35. Accordingly, the most that Wesco will pay for a bodily injury that is a continuous or repeated exposure to substantially the same general harmful conditions is $1,000,000.

### SECOND CAUSE OF ACTION
### ALTERNATIVELY, EACH POLICY YEAR POLICY LIMIT FOR PRIMARY AND EXCESS LIABILITY COVERAGE MUST BE EXHAUSTED

36. Wesco reasserts and realleges each and every allegation contained within paragraphs "1" through "35" as if fully set forth herein.

37. The Policy only pays sums that the insured legally becomes obligated to pay as damages because of "bodily injury" or "property damage" that is caused by an "occurrence", as defined by the Policy, that occurs during the policy period, subject to the Policy's terms, provisions, conditions, and exclusions.

38. To the extent that this Court declares that there is more than one Each Occurrence Limit triggered by the allegations in the Underlying Action, then each Primary and Excess policy limit must be exhausted pursuant to the provisions of the Primary and Excess policies' terms, condition, provisions and exclusions.

39. Accordingly, there must be vertical exhaustion of Primary and Excess limits of insurance before horizontal exhaustion of any limits available in subsequent policy years.

**WHEREFORE**, plaintiff, Wesco Insurance Company, respectfully requests judgment by Order in its favor against defendants:

(1) Declaring that there is only one Each Occurrence Limit available from Wesco Insurance Company's Commercial General Liability policy for any settlement or award of the Court in the Underlying Action;

(2) Declaring that Federal Insurance Company is obligated to provide coverage for any settlement or award in excess of the Wesco Insurance Company Commercial General Liability policy's Each Occurrence Limit of $1,000,000;

(3) Alternatively, Declaring that in the event that this Court rules that there is more than one Each Occurrence Limit triggered on the Wesco Insurance Company Commercial General Liability policy, that each policy years' available Primary and Excess limits must be vertically exhausted before triggering any subsequent policy limits; and

  (4) Granting Wesco Insurance Company such other, further, and/or different relief as the Court may deem just, equitable, and proper, together with the costs and disbursements of this declaratory judgment action.

Dated: Buffalo, New York
    April 6, 2022

               HURWITZ & FINE, P.C.

               _____
               Dan D. Kohane, Esq.
               Thomas Casella, Esq.
               *Attorneys for Plaintiff,*
               *Wesco Insurance Company*
               1300 Liberty Building
               Buffalo, New York 14202

TO: Federal Insurance Company
   C/O CT Corporation Systems
   334 North Senate Avenue
   Indianapolis, Indiana 46204